```
 1                      UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF MICHIGAN
 2                            SOUTHERN DIVISION

 3      United States of America,

 4                      Plaintiff,          Case No. 12-20387
          -v-
 5
        Smiley Villa,
 6
                        Defendant.
 7      _____/

 8                           DETENTION HEARING

 9            BEFORE THE HONORABLE LAURIE J. MICHELSON
                   United States District Magistrate
10            Theodore Levin United States Courthouse
                      231 West Lafayette Boulevard
11                        Detroit, Michigan
                            May 10, 2012
12

13      APPEARANCES:

14      FOR THE PLAINTIFF:    SAIMA MOHSIN
                              United States Attorney's Office
15                            211 West Fort Street, Suite 2001
                              Detroit, Michigan  48226
16
        FOR THE DEFENDANT:    RICHARD H. MORGAN, JR.
17                            Law Office of Richard H. Morgan, Jr.
                              485 Orchard Lake Road, Suite 203
18                            Pontiac, Michigan  48341

19

20

21

22

23      RECORDED BY:       Jane Johnson

24      TRANSCRIBED BY:    Rene Twedt - www.transcriptorders.com

25            (Transcriber not present at live proceedings.
               Transcript produced from digital recording.)
```

1                         TABLE OF CONTENTS

2    MATTER                                                       PAGE

3    DETENTION HEARING

4    Proffer by Ms. Mohsin...................................    3
     Proffer by Mr. Morgan...................................   13
5
     Argument by Ms. Mohsin..................................   21
6    Argument by Mr. Morgan..................................   23

7    Ruling by the Court.....................................   24

8

9    CERTIFICATE OF TRANSCRIBER..............................   28

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Detention Hearing - May 10, 2012                                    3

```
 1 ║ Detroit, Michigan
 2 ║ May 10, 2012
 3 ║ 3:25 p.m.
 4 ║                         *        *        *
 5 ║         THE CLERK:  The Court calls Case 12-30146, USA versus
 6 ║ Smiley Villa.
 7 ║         MS. MOHSIN:  Your Honor, good afternoon.  Saima
 8 ║ Mohsin appearing on behalf of the United States.
 9 ║         This is the date and time set for a detention hearing
10 ║ in this matter.  The Government is ready to proceed by proffer.
11 ║         MR. MORGAN:  Good afternoon, your Honor.  For the
12 ║ record, Richard H. Morgan, Jr., appearing for Mr. Villa.
13 ║ We're ready to proceed also by proffer.
14 ║         THE COURT:  Okay.  Ms. Mohsin.
15 ║         MS. MOHSIN:  Your Honor, let me begin first by
16 ║ informing the Court that we do not believe that this is a
17 ║ presumption case.  This case involves the possession of a
18 ║ firearm by a felon.
19 ║         We are going to spend a little bit of time this
20 ║ afternoon, your Honor, discussing the underlying facts of
21 ║ this case, which involve a particularly violent assault and
22 ║ gang activity, and those are primarily the reasons why the
23 ║ Government is seeking detention in this case.
24 ║         Pursuant to 3142(f), there are certain circumstances
25 ║ that the Court should consider in making its determination,
```

1    and I would like to address some of those circumstances.

2            First and foremost, I want to talk about where this

3    Defendant resides.  He does reside in Michigan.  That is our

4    information.  He doesn't really have any family or community

5    ties in the State of Michigan.

6            There is one individual by the name of April Sykes,

7    she was here yesterday, and for some period of time she was

8    here today.  It was my understanding that she was going to

9    testify.

10           But I did inform Counsel that we learned that she had

11   two open warrants for her arrest and so she did not testify

12   here today.  Those warrants, I bring to the Court's attention,

13   because the Defendant resides with someone who has a criminal

14   history and who herself is wanted for criminal activity in

15   other jurisdictions.

16           This is a Defendant whose ties to Michigan, as

17   reported in the Pretrial Services report, are limited to

18   this individual, his girlfriend, and two children.  There

19   are no other ties reported in the State of Michigan by this

20   Defendant.

21           He is employed, according to the Pretrial Services

22   report, and has only been employed for approximately one

23   month.  I submit to you that that is significant, because

24   other than that one reported employment he has had a

25   significant period of unemployment.

Detention Hearing - May 10, 2012                    5

 1          Though not reflected in his -- his Pretrial Services
 2    report, I don't know what this Defendant's educational level
 3    is, but it appears from the Pretrial Services report that his
 4    employment prospects are not particularly promising at this
 5    point.  He does have the job that he has had for one month,
 6    but again, it's not a very longstanding employment that he has
 7    had.
 8          What he does have is a very lengthy criminal history.
 9    Three convictions at the age of 18, three felony convictions
10    early on after he was 18 years old, and then one later on in
11    life.
12          He has had 14 different arrests since 1993.  Four of
13    them were felonies.  One of them involved the -- an assault
14    with a dangerous weapon and a domestic violence, all in one
15    case.
16          He has had six misdemeanor convictions and four of
17    them have involved domestic violence or assaults.  And those
18    have been since 1993.  He has also had an additional three
19    assault cases, three assault arrests --
20          THE COURT:  1993 or 2000?
21          MS. MOHSIN:  I apologize, 2003.
22          So essentially in the last nine years this Defendant
23    has accrued seven arrests for assaults, of which -- which
24    led to four convictions.  These are predominantly, although
25    perhaps not exclusively, domestic violence related assaults.

1          And I raise that, because that is significant when

2    you take that information and compare it to the factual

3    allegations that are contained in the complaint.  I'll get

4    to that in a minute.

5          But it appears that this Defendant has a history

6    of being involved with assaults on what I will classify as

7    someone that perhaps is not of the same size and shape as

8    the Defendant, perhaps someone who is not as strong as the

9    Defendant.

10         The Defendant has a 16-year-long drug history.  He

11   has admitted to Pretrial Services that he has been involved

12   in regular use of marijuana, cocaine and methamphetamine.

13         Despite his assertion to Pretrial Services that his

14   last meth use, meth use was two weeks ago, when tested for

15   methamphetamines and for drugs upon his arrest two days ago,

16   he tested positive for methamphetamines.  So I submit to you,

17   your Honor, that his use of methamphetamine is -- is perhaps

18   more regular than even what is acknowledged in that report.

19         This is a Defendant who has a very important

20   relationship here, your Honor, and that is a relationship

21   with the Devil's Disciples motorcycle gang.  That's a violent

22   gang.  It is a motorcycle gang that is headquartered here in

23   Michigan.  It has chapters in a number of different states.

24   Its national headquarters is Michigan.  And this is a

25   Defendant who has acknowledged to the FBI that he is a member

1    of this gang.

2           Becoming a member of this gang requires acceptance by

3    the gang.  There are rules and bylaws that gang members have

4    to abide by.  Once an individual becomes a member of this

5    gang, they cannot leave this gang without permission from the

6    leadership of the gang.  He is a member of this gang.

7           And if the Court has had an opportunity to review the

8    underlying complaint that I have made some reference to here,

9    it talks about the facts that gave rise to the Defendant's

10   possession -- or arrest for the possession of a firearm in

11   connection with this case.

12          In early January of this year, your Honor, this

13   Defendant and others, gang members wearing gang colors,

14   specifically leather jackets that have displayed on the back

15   the name, Devil's Disciples, and the colors of this particular

16   gang prominently displayed so that anyone who walks past them,

17   drives past them, sees them in a bar, it's very clear to them

18   that this individual belongs to this motorcycle gang.

19          He went into this bar called the New York New York

20   Bar.  The New York New York Bar is in an area of Michigan that

21   is the territorial, so to speak, jurisdiction of the Devil's

22   Disciples.  That is where their national headquarters are.

23   They take pride in their territory and they do not permit

24   rival gangs to come into their territory, you know, without --

25   unannounced, so to speak.

Detention Hearing - May 10, 2012                                    8

1           In this instance, this Defendant and another went

2    into the New York New York Bar.  They acknowledged later to

3    the FBI that they considered that to be their territory.

4           They observed an individual wearing a black leather

5    jacket.  The black leather jacket had some initials on it

6    that said BLS.

7           This Defendant and his cohorts, other members of the

8    Devil's Disciples, then approached that individual.  They

9    demanded that he give the jacket to them.  They assaulted him.

10   They broke his jaw in two places and rendered him unconscious.

11   Then they seized his jacket off of his body.  They took that

12   jacket home.

13          At some point the FBI was able to obtain information

14   that led to the execution of a search warrant at this

15   Defendant's home and they found several items of significance.

16   They found a lot of evidence that this Defendant is, in fact,

17   a member of this gang.

18          In addition to his gang colors, as reported by

19   witnesses in the bar, they found the gang colors that he was

20   wearing that night in his home.  They found business cards

21   and photographs and other documents, such as the national

22   bylaws, membership lists of individuals that belonged to that

23   gang, you know, addresses, things like that, establishing his

24   connection to this violent motorcycle gang.

25          THE COURT:  Were there witnesses in the bar to the

1    assault?

2            MS. MOHSIN:  There were witnesses to the bar -- to

3    the assault.

4            THE COURT:  Did any identify the Defendant?

5            MS. MOHSIN:  Your Honor, there were witnesses, some

6    of which have made some identifications, although I'm not

7    prepared to give that information to you now, because I don't

8    have it handy with me.

9            More -- more significantly, though, and I'm going to

10   get to the Defendant's -- the strength of the evidence in this

11   case.

12           THE COURT:  Okay.

13           MS. MOHSIN:  First and foremost, your Honor, the

14   jacket of the individual that was assaulted in the bar was

15   found in this Defendant's home, and cut up, and he was

16   remaking it into another jacket.

17           Ironically, or perhaps unfortunately for the

18   individual who was assaulted, he was a 50-plus-year-old man

19   who this Defendant and the other Defendants believed to be a

20   member of a rival motorcycle gang.

21           If the Court recalls, he, in fact, was not a member

22   of any gang.  He was there enjoying the music.  There was some

23   sort of a concert or, you know, band playing and that jacket

24   that he was wearing belonged to that particular motor --

25   excuse me -- heavy metal band.  So the --

```
1              THE COURT:  The BLS isn't a rival gang?

2              MS. MOHSIN:  Yeah.  Black Label Society.  It's not

3     the Black Pistons motorcycle club.

4              THE COURT:  Okay.

5              MS. MOHSIN:  So this truly innocent victim, who has

6     had a broken jaw, it's my understanding that he had other

7     health problems, carried a cane.  I mean, he was obviously

8     someone that was weaker than this Defendant.

9              And I had brought to the Court's attention earlier

10    that he has these domestic violence cases from the past, you

11    know, exhibiting that this is an individual who is involved

12    in perpetrating assaults on individuals who are perhaps less

13    capable than him physically to defend themselves.

14             And as I indicated to the Court earlier, this

15    individual, when he was assaulted, he broke -- his jaw was

16    broken in two places and he was rendered unconscious by this

17    vicious attack by the Defendant and his cohorts inside that

18    bar.

19             Getting back to the search warrant and what was found

20    there, the FBI found the vest that belonged to the victim of

21    that assault inside of Mr. Villa's house.  They found other

22    items that belonged -- that had been pinned on the vest that

23    had been removed from that vest and placed on the Defendant's

24    own vest.  He had taken items from that vest and put them on

25    his own vest.
```

 1          They found a scale.  They found knives.  They found

 2    a shotgun and they found shotgun shells.  And interestingly

 3    enough, they found colors from a third motorcycle gang, the

 4    Magnificent Motorcycle Club.

 5          This is significant, your Honor, because one of the

 6    objectives, one of the methods by which a motorcycle gang or

 7    really any gang maintains their status within their territory

 8    is by ensuring through acts of violence that other rival gangs

 9    do not commit crimes or even have a presence in their

10    territory.

11          And that's really what this underlying offense was

12    about.  It's not charged as we stand here today, however, the

13    Government intends to pursue charges in connection with that

14    assault that was perpetrated on that individual and those

15    charges will be forthcoming in the form of an indictment in

16    the very near future.

17          So I submit to you, your Honor, the facts of the case

18    are strong.  The Defendant made admissions to the FBI at the

19    time.  He admitted that he had been a member of the motorcycle

20    gang for a year, and previously he had been a member of

21    another motorcycle gang called the Next of Kin motorcycle

22    gang.

23          He admitted that at -- on the night that the assault

24    was -- had occurred near closing time, he and -- though he

25    would not identify the other individual, he said that he and

Detention Hearing - May 10, 2012

```
 1    his, quote, neighbor stopped at the New York New York Bar in
 2    Chesterfield Township, where they parked their motorcycle --
 3    motorcycles outside of the front door, went inside, and they
 4    were both wearing their Devil's Disciples colors.  And he
 5    indicated that this was a bar that the Devil's Disciples
 6    regularly hung out at, and in fact, considered their territory.
 7            According to the Defendant, it appeared that the
 8    victim was wearing Black Pistons, quote/unquote, colors.
 9    And Mr. Villa explained that the Black Pistons are a rival
10    motorcycle gang.
11            Mr. Villa stated that the Devil's Disciples
12    considered the New York New York Bar their territory and he
13    said, quote, "It's DD territory.  It's an insult to come in
14    the area.  Black Pistons shouldn't be in the DD area."
15            And then the Defendant admits to having confronted
16    the victim and he admits to having pushed him.  The Defendant
17    says that his cohort, his neighbor, who he would not identify
18    to the FBI, physically assaulted the victim; that the
19    Defendant did not.
20            But I submit to you, your Honor, that the facts speak
21    for themselves in this case.  This is a very serious assault.
22    This is an individual whose association with the -- with this
23    gang makes him a danger to the community.
24            The fact that he has, in addition, a shotgun with
25    shotgun shells in his home when he has four felony convictions
```

Detention Hearing - May 10, 2012

1    and multiple domestic violence convictions show that this is

2    a Defendant who poses a very real and ongoing danger to the

3    community.

4            In addition, the fact that he has very limited ties

5    to this community, that he has very limited job prospects, has

6    only been employed for one month, all are factors that the

7    Court ought to consider in determining whether this Defendant

8    ought to be released.

9            And we submit to you, your Honor, that this Defendant

10   should not be released.  He should be detained pending trial.

11           Thank you.

12           THE COURT:  Thank you.

13           Mr. Morgan.

14           MR. MORGAN:  Wow.  That was a lot, wasn't it?

15           Let me say this, Judge:  First of all, he is charged

16   with felon in possession of a firearm.  That's the charge.

17   Nothing about an assault.

18           And far as I know, assaulting someone has not become

19   a federal offense.  Now, I'm sure they may have come up with

20   a way, but as far as I know, it's not.  And as she said, he

21   doesn't admit to assaulting anybody.  Someone else assaulted

22   the young man.

23           Let's talk about his ties to the community.  At age

24   18 he was arrested, in 1993, and -- and -- and was convicted

25   of a crime in Saginaw.  You have the presentence report.  You

1   see that there are numerous convictions, all in the State of

2   Michigan.  Not a -- not a one -- he said he came to Michigan

3   when he was three years old, been here ever since.  He is 37,

4   been here 34 years.  Substantial ties to the community, even

5   if they are by way of being in -- housed in the Department of

6   Correction.

7          He has been convicted of three felonies.  Three --

8   I'm sorry, four felonies.  Three of those took place

9   approximately 15 years ago when he was 18 years old.  He

10  has six misdemeanors, all of them domestic violence.

11         Not one of these convictions suggests that he has

12  ever failed to appear for any court appearance whatsoever.

13         I have a letter from his employer which I will tender

14  to the Court indicating that he -- that he is employed.

15         May I approach?

16         THE COURT:  Yes, please.

17         MR. MORGAN:  That he is --

18         THE COURT:  What -- but don't skip over the violence

19  issue.  I mean, say there are six, six domestic violence, so

20  he is not a risk of flight, but what do I do about the --

21         MR. MORGAN:  But he --

22         THE COURT:  -- the violence to anybody, the -- not

23  the violence, I'm sorry -- the risk of danger to other people

24  in the community with that sort of a background.

25         MR. MORGAN:  The domestic violences are all related

1    to an old girlfriend out of Battle Creek.  He indicates to me

2    that she constantly called the police.  You'll notice that

3    most of them, they were reduced to something.  And she was a

4    person who, whenever she got angry, she called the police and

5    he got charged.  And all of those took place between 19 --

6    2003, all in Battle Creek.

7         There is -- there is not another one after that time,

8    domestic violences.  There's -- there are some assaults that

9    are -- have unknown dispositions.

10        Of the 14 so-called charges, six of them are

11   misdemeanors.  Four of them are unknown.  The three felonies,

12   four of the -- three of the four felonies all took place at

13   age 18.

14        He has a job.  He has two children.  Mrs. Brenda

15   [sic] Sykes, who she suggests left earlier today was, in fact,

16   here.  She -- if she had been here, she would have indicated

17   to the Court that she -- that she was prepared for him to stay

18   there.  It's his home.

19        And you will notice again on the presentence -- on

20   the Pretrial Services report indicates that he owns the home

21   on Rox -- I believe it's Roxanne --

22        THE DEFENDANT:  Roanne.

23        MR. MORGAN:  Roanne in Fair Haven.  Owns property.

24        Judge, the violence, the violence in this particular

25   case are all misdemeanors except for one.  It took place in

Detention Hearing - May 10, 2012                    16

1    2007, a felonious assault, which he spent ten months in jail.

2              THE COURT:  That, that's the --

3              MR. MORGAN:  That's the one out of -- they think is

4    out of Port Huron, St. Clair County.

5              THE COURT:  And what about this one in 2004, the

6    felony home invasion?

7              Oh, I see, pled guilty to a misdemeanor.

8              MR. MORGAN:  Yes.  Most of them were reduced, Judge.

9    Having done this for a long time, if you look at these things,

10   you notice that most of them were reduced to misdemeanors,

11   which suggests that the proofs may or not -- may or may not

12   have been that great to begin with.

13             He has ties to this community living here 34 years.

14   He has two children.  He has a fiancee, Mrs. April Sykes.

15             Even though she suggests to this Court that she has

16   warrants, I -- I can't speak on that at all.  She -- when I

17   talked to her, she said, no, not -- one of those warrants,

18   by the way, supposedly is a traffic warrant.  The other

19   one is supposedly something out of Indiana, per -- per the

20   U.S. Attorney.

21             These allegations about the Devil's Disciples,

22   Judge, there has been no charges brought against the Devil's

23   Disciples that I know of relating to this, this case at all.

24             She talks about there are numerous motorcycle gangs

25   in the Eastern District, but that doesn't mean all of them are

1    violent gangs.  If, in fact, at a later date they bring to

2    this Court an indictment suggesting that they are a danger or

3    they are doing the kinds of things that she suggests, that's

4    when it should be concerned.  Right now they are only an

5    association.

6            THE COURT:  But I have to -- I have to consider the

7    Defendant's characteristics, which I -- as I understand what

8    they are saying is, the underlying assault has not been

9    charged, but it resulted in a search warrant that resulted

10   in finding the gun that's the basis of the charge, but that

11   the -- the circumstance leading up to the search warrant was

12   this --

13           MR. MORGAN:  An assault.

14           THE COURT:  -- relatively brutal assault.

15           MR. MORGAN:  But not by my client.  Even -- even she

16   couldn't say that.  She said he may have pushed him.

17           THE COURT:  Right.  He's there.

18           MR. MORGAN:  He's there.

19           THE COURT:  What does he do to prevent this man from

20   being --

21           MR. MORGAN:  Judge, but --

22           THE COURT:  -- beaten unconscious?

23           MR. MORGAN:  -- merely present is not guilt.

24           THE COURT:  No, I'm not -- I'm not saying -- I'm not

25   suggesting --

Detention Hearing - May 10, 2012

```
 1              MR. MORGAN:  I mean, but that's all this --
 2              THE COURT:  I'm not suggesting guilt.
 3              MR. MORGAN:  He's merely present.
 4              THE COURT:  I'm trying to analyze danger to community.
 5   And so is it -- does it make you a danger when you're with
 6   people, and you're with people that it ends up resulting in
 7   somebody being beaten unconscious?
 8              MS. MOHSIN:  May I, your Honor?
 9              MR. MORGAN:  No, no.  No, no.
10              THE COURT:  Mr. Morgan.
11              MR. MORGAN:  No, no.
12              Judge, there is a condition -- you can put him on
13   a tether.  You can have a -- have a -- have a curfew.  He can
14   go to work and back home.
15              His wife has seizures.  His ten -- ten-day-old --
16   month-old baby also has seizures.  He needs to be there for
17   his family.
18              He is prepared to do anything that this Court orders
19   him to do.  And I believe there are conditions that can be set
20   that would ensure that -- number one, there is no suggestion
21   that he has never appeared with all of these contacts.  And
22   that certainly should say something to the Court in terms of
23   the contacts and there never being the suggestion of him bench
24   warranting, ever.  That's -- that's a good -- that's a good
25   statement to look to.
```

Detention Hearing - May 10, 2012

1          Secondly --

2          THE COURT:  I agree.  I'm more concerned, I'll tell

3     you, about the -- the danger factor and -- and --

4          MR. MORGAN:  And I believe that the Court, as I said,

5     can -- can fashion a condition where he goes to work.  He has

6     a -- he has employment.  Before that he was a -- he was --

7     he did tattoo -- he is a welder by trade.  That -- and --

8     and -- and that's in the presentence -- the Pretrial Services

9     report, your Honor.

10          I'm suggesting to this Court that the violence,

11     although they -- I don't want to call it minimum, but most

12     of them evolved around a girlfriend.

13          The allegation of the assault back in January -- and

14     let's talk about January.  They came to his house in January.

15     He didn't flee.

16          They brought him down before a grand jury.  He didn't

17     flee.

18          They talked to him.  That's why she has an FBI-6,

19     302.  They talked to him.  He didn't flee.

20          He hasn't assaulted anyone else.  He's been here.

21     He didn't run.  Con -- what more contact can one have than

22     knowing he has a problem and he stays here.

23          I -- the Court suggests that she is concerned about

24     the violence, Judge, but other than the domestic violence with

25     the alleged girlfriend, who I suggest called every time she

1  got into an argument and put him in jail, is what he tells me.

2  And this is a proffer, so all I can tell you is what she --

3  he tells me.

4       All we have is the other -- the only other violence

5  being a felonious assault that was re -- pled down to.  And

6  no weapons.  I think that's important.  No guns.  No guns.

7  No suggestion of any kind of dangerous weapon at all, Judge.

8       There are conditions that this Court can set that

9  would ensure his appearance and that he will never have

10  contact with anyone other than to go to work.

11       THE COURT:  Mr. Morgan, about the shotgun that's

12  in the home --

13       MR. MORGAN:  If -- if -- if --

14       THE COURT:  -- of somebody with felony convictions.

15       MR. MORGAN:  If -- if you will note, Judge, the

16  shotgun, they don't even know if it was operable or not.  It

17  was there before he moved into the home.  They found a shotgun

18  and three shells.  The shells don't even match the shotgun.

19  There was no -- there was no bullets in the shotgun at all.

20  A different model, different shells.

21       THE COURT:  What do you mean, if it was operable?

22  If you had the right shells, did it work?

23       MR. MORGAN:  No, I'm saying that they -- they

24  indicate that they have not determined whether or not the

25  shotgun, in and of itself, was operable, that it could be

Detention Hearing - May 10, 2012

1    fired.  He -- he maintains that it was not operable at all.
2    And he says he never had any shells for that shotgun at all.
3    There were three shells.
4         He moved in the house.  There was an armoire.  In
5    that armoire was the shells that they found.  The shotgun
6    was -- he maintains, was not operable and -- and it had never
7    been used and there was no shells in it at all.
8         So we -- we stand before the Court being charged with
9    felon in possession of a firearm and they are asking for
10   detention.
11        THE COURT:  Okay.  Thank you.
12        Ms. Mohsin, anything you want to --
13        MS. MOHSIN:  You know, Judge, I just don't want the
14   record to be mis -- to be -- to reflect what I think is
15   somewhat of a mischaracterization as far as what this
16   Defendant's role was that night when he went into the --
17   the bar close to closing time and approached this victim.
18        He approached the victim.  He demanded the colors
19   be taken from the victim.  He was involved.  He pushed the
20   victim and the other -- he alleges that the other individual
21   actually punched the victim.
22        I don't know that that's necessarily how the facts
23   will bear out in that, that assault case.  What I'm suggesting
24   is that he was not merely present.  This is not a mere
25   presence, by far.

```
 1              And to suggest that the Defendant had a domestic
 2    relationship with a woman and was convicted six times --
 3              MR. MORGAN:  That's not true, Judge.
 4              MS. MOHSIN:  Am I misstating?
 5              MR. MORGAN:  Yes, you are, as usual.  Three times in
 6    Battle Creek for domestic violence.
 7              THE COURT:  Oh, don't -- don't make it -- how many
 8    times was he convicted of --
 9              MS. MOHSIN:  Hang on, Judge, because I have it
10    written down here.
11              Six misdemeanor convictions, four times for domestic
12    assault.  Three times they were dismissed.
13              To suggest that that's nothing but a woman who is
14    just complaining about her boyfriend, I think, is -- you know,
15    that -- I just don't understand how counsel can make such an
16    argument.  The man has four convictions for domestic violence
17    since 2003, three more that were dismissed.
18              The record speaks for itself.  He has a total of six
19    misdemeanor convictions.  We don't have that woman here.  And
20    I don't think we need to have any other information.  The fact
21    is, he was convicted of those offenses and they involved
22    domestic violence.  He has an assault with a dangerous weapon
23    conviction, as well.
24              So I just don't want the record to reflect something
25    different than, you know, what's in the Pretrial Services
```

Detention Hearing - May 10, 2012

1    report.  So I wanted the Court to be clear about that.

2         I don't have anything else to add.  I don't think

3    I said on the record that the Government agrees with the

4    Pretrial Services recommendation here, which is detention.

5    I think that, you know, that was also Pretrial Services'

6    recommendation and we agree with that recommendation.

7         MR. MORGAN:  Judge, if you look at the Pretrial

8    Services report, 12/10/03, 12/10/03, 12/4/03, all are domestic

9    violence arising out of Battle Creek.  The other domestic

10   violence occurs in '07, along with a felonious assault charge,

11   they get ten months for.

12        The -- other than that, the domestic violence relates

13   to one woman who I suggest to this Court was calling the

14   police, and if you look at how they were taken care of, and

15   he was never charged with a felony on any of them.  And that

16   should have happened in state court.

17        As it -- as it relates to the assault, Judge, he was

18   there.  She keeps saying he pushed him.  That's only an

19   allegation.  It's nothing -- they don't say he hit him.  They

20   say he pushed him.

21        Other than that, what's before this Court to suggest

22   that this man, in the last four or five years, since he has

23   had these children, since he has been engaged with Mrs. Sykes

24   has been involved in any -- with any kind of violent activity?

25        THE COURT:  Well, I don't think, Mr. Morgan -- I

Detention Hearing - May 10, 2012

1   mean, I just -- I don't think you want to overstate it too

2   much.  As I said, you have got a situation where he admits to

3   being present with a group of people and an individual gets

4   assaulted to the point that he is beaten unconscious.

5           A search warrant is executed where the vest that this

6   man was wearing is found in the Defendant's home.  So I don't

7   know that you can say there's -- there's no connection there.

8           MR. MORGAN:  I'm not.  Judge, I'm not.  All I'm

9   suggesting to this Court, that there are --

10          THE COURT:  It's almost like it's a souvenir.

11  This -- he knows this person's been beaten unconscious.

12  He's there.  You're saying, well, he may not have physically

13  delivered the blows, but he took the prize.

14          MR. MORGAN:  Well, he took -- he took the -- he took

15  the vest or the vest was there.  Whether he brought it there

16  or someone else brought it, it was in his home.

17          THE COURT:  Right.

18          MR. MORGAN:  But as to whether or not, Judge, there

19  are conditions that can be -- that can be found that will

20  ensure his appearance and that his -- and ensures that he --

21  that he will not hurt anyone in society, I think there can be.

22  As I said, a tether would certainly make sure he is home and

23  not in the streets.

24          THE COURT:  Okay.  No, you have -- I'll take -- you

25  both make very good and compelling arguments and it's not an

 1   easy decision.

 2        The Court tends and does rely on the individual

 3   factors that I have to consider under the Bail Reform Act in

 4   determining whether to detain or release Mr. Villa.  Those

 5   include the nature and circumstance of the underlying offense.

 6        We are dealing with a felon in possession charge, so

 7   I have got somebody with prior felony convictions who is found

 8   to be in possession of a shotgun.

 9        I have to consider the weight of the evidence against

10   the Defendant in terms of the underlying charge, that that

11   seems to be pretty strong.  I don't think there is really much

12   dispute that the gun was found in the home and that there are

13   the prior felony convictions.

14        The history and characteristics of the Defendant,

15   there's been some conflicting evidence presented about the

16   Defendant's ties.  I do think it's clear he has lived here.

17   I think the Government's position is, there is not a lot of,

18   perhaps, family ties or employment ties or monetary ties that

19   tie the Defendant to this District.

20        But as I said, my issue, I'm concerned more with

21   danger to the community than I am risk of flight.  And -- and

22   that comes from the underlying incident that the Government

23   has proffered that involved an individual at a bar, seemingly

24   an innocent victim, whose jaw was broken and he was rendered

25   unconscious.

Detention Hearing - May 10, 2012

```
 1          There is no dispute the Defendant was part of that.
 2     There is a dispute whether he is the one who actually
 3     inflicted the blows, but he was part of it.
 4          And a search warrant found this victim's vest and
 5     items from his vest in the Defendant's home, which is
 6     certainly troublesome to the Court.
 7          The prior criminal history, there -- there is a
 8     history of prior assaultive behavior which the Pretrial
 9     Services report points out.  And all of that goes into
10     the nature and seriousness of the danger to the community.
11          Considering all of the factors together, I am going
12     to accept the recommendation of Pretrial Services.  I am
13     going to order that Mr. Villa be detained.  I think the
14     Government has met its burden.  And I will issue a written
15     report to that effect.
16          MR. MORGAN:  Your Honor, is the Court suggesting that
17     there aren't any -- there aren't any conditions that -- that
18     could be set that would, in fact, ensure the safety of the
19     community?
20          THE COURT:  Yes.  That is -- that is my ruling, and
21     I will issue a written order to that effect.
22          And Mr. Villa, you do have a right to appeal to
23     the -- to the District Judge on duty.
24          Thank you.
25          MR. MORGAN:  Thank you very much, your Honor.
```

1          MS. MOHSIN:  Thank you, your Honor.

2          THE CLERK:  Preliminary --

3          THE COURT:  Oh, yes.  Thank you, Jane.

4          We do -- I'm sorry, we need to set this matter for

5     preliminary examination.

6          THE CLERK:  It would be 14 days, since he is being

7     detained, so that would be May 22nd.

8          THE COURT:  From the 8th.

9          THE CLERK:  From the 8th.

10          THE COURT:  Looks like it was his initial --

11          THE CLERK:  That would be May 22nd.

12          THE COURT:  Okay.

13          MS. MOHSIN:  Thank you, your Honor.

14          MR. MORGAN:  Thank you.

15          THE COURT:  May 22nd, from the initial appearance.

16     Thank you.

17          THE CLERK:  Yeah, that's from May 8th.

18          (Proceedings adjourned at 3:54 p.m.)

19                         *      *      *

20

21

22

23

24

25

Detention Hearing - May 10, 2012

1

2                          CERTIFICATE OF TRANSCRIBER

3

4            I do hereby certify that the foregoing is a

5    correct transcription from the digital sound recording

6    of proceedings in the above-entitled cause on the date

7    hereinbefore set forth and has been prepared by me or

8    under my direction.

9

10                       s/ Rene L. Twedt
                     RENE L. TWEDT, CSR, RMR, CRR
11                   Federal Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25